## T. L. Larkin v. H. L. Trammel.

Decided November 20, 1907.

**1.—Deed—Consideration—Evidence.**

The recited consideration in a deed is not conclusive, and may be enquired into.

**2.—Deed—Breach of Warranty—Measure of Damage.**

In a suit for damages for a partial breach of warranty of title to land, the measure of damage is the reasonable market value of that portion of the land the title to which has failed, provided such value does not exceed the proportionate part of the total consideration.

**3.—Deed—Intention of Parties—Evidence.**

The issue being whether or not certain land was intended by the grantor to be embraced in his deed, evidence of statements made by him as to the number of acres of prairie land in the tract, the particular tract in controversy being prairie land, was material and competent.

**4.—Contradiction of Witness—Evidence.**

A grantor having testified that he had never warranted the title to a certain tract of land and never intended to do so, two deeds of trust executed by him on said tract, containing covenants of warranty, were admissible for the purpose of contradicting him.

**5.—Breach of Warranty—Remedy.**

The fact that a contract for exchange of lands provided the mode of relief and the measure of damages in case of rescission of the contract, would not prevent the warrantee from suing upon the covenant of warranty for partial breach of the same.

**6.—Deed—Shortage in Acreage—Breach of Warranty.**

Where several distinct tracts of land are embraced in a deed containing a general covenant of warranty, and the title to one of the tracts fails, it constitutes a breach of the warranty and not merely a shortage in acreage.

**7.—Breach of Warranty—Proof.**

In a suit for breach of warranty of title, it is ordinarily necessary to prove eviction, and proof that the land in controversy is in the adverse and exclusive possession of a third party is not sufficient; the plaintiff must show that the occupant of the land was holding under a superior title. But where the particular tract in controversy was unenclosed at the time of the sale, and the defendant warrantor testified on the trial that he told the plaintiff pending the trade that "every acre I owned was under fence and that I didn't own anything besides what was under fence," it relieved the plaintiff of the necessity of proving the superior title of the occupant. The fact that the warrantor himself had only a quit-claim deed to the land would not establish that he did not have the title.

Error from the 11th Judicial District, Harris County. Tried below before Hon. Chas. E. Ashe.

*Masterson, Atkinson & Masterson,* for plaintiff in error.—The consideration in the deed from T. L. Larkin to H. L. Trammell, dated 16th May, 1905, the only one which embraced the 102-acre tract, being based upon a consideration of one dollar, this was the measure of damages for breach of the covenant of warranty, and not the market value. Sutton v. Page, 4 Texas, 142; Hall v. Pierson, 1 White & W. Civ. Cas., 1210; Durst v. Swift, 11 Texas, 283; Hall v. York, 22 Texas, 641; White v. Affleck, 1 Posey, U. C., 82; Flaniken v. Neal, 67 Texas, 629; Saunders v. Flaniken, 77 Texas, 662; Eustis v. Fosdick, 88 Texas, 615; Rogers v. Golson, 31 S. W. Rep., 200; Johns v. Hardin, 81 Texas, 41; Williams v. Beeman, 2 Dev., 483; Mette v. Dow, 9 Lea, 93; Whitzman v. Hirsh, 87 Tenn., 513; Moore v. Frankenfield, 25 Minn., 540; Crisfield v. Storr, 36 Md., 129; Taylor v. Wallace, 37 Pac. Rep., 963; Wilson v. Taylor's Exrs., 9 Ohio St., 595.

The testimony of the defendant in error as to the value of the personal property included in the exchange of properties between plaintiff and defendant, was not admissible because the terms of the exchange were reduced to writing and fixed by the contracts and the consideration in the deeds executed in accordance with

same showed that it was an exchange of property, in bulk, without valuation; therefore, parol evidence to vary said terms, or to establish a basis for recovery of money, was inadmissible.    Gibson v. Fifer, 21 Texas, 260; Weaver v. City of Gainesville, 21 S. W. Rep., 317; Byars v. Byars, 32 S. W. Rep., 925; Kahn v. Kahn, 94 Texas, 114; Teague v. Teague, 71 S. W. Rep., 555; Eastline R. R. v. Garrett, 52 Texas, 138; Rapid Transit Co. v. Smith, 98 Texas, 553.

Warranty covers the land pointed out, although the description in the deed did not cover all the land pointed out:  Meade v. Jones, 35 S. W. Rep., 310; Pardue v. James, 74 Texas, 305.

The converse of the proposition must be true.   The warranty of title in a deed is no warranty of quantity:  Daugherty v. Knolle, 44 Texas, 455; Weir v. McGee, 25 Texas Sup., 31; Moore v. Hazelwood, 67 Texas, 626; Elder v. First Nat. Bank, 42 S. W. Rep., 125; Barnes v. Lightfoot, 62 S. W. Rep., 564; Wuest v. Moehrig, 57 S. W. Rep., 865.

The trial court erred in refusing to give defendant's special instruction No. 2, which is as follows:  "The jury is instructed that the contracts in evidence and the deeds executed by defendant in accordance with said contract establish the dealings between the parties to be an exchange of the Larkin plantation, and certain personal property, by said Larkin, for an oil well in Jefferson County, Texas, and upon the face of the deed from Larkin, it was a sale, or conveyance in gross of land and not a sale by the acre; therefore, plaintiff is not entitled to recover upon the general warranty in the deed on account of any deficit in acreage of the Larkin farm, if any, although the number of acres is stated to be 1004."   Dougherty v. Knolle, 44 Texas, 455; Weir v. McGee, 25 Texas Sup., 31; Moore v. Hazelwood, 67 Texas, 626; Elder v. First Nat. Bank, 42 S. W. Rep., 125; Barnes v. Lightfoot, 62 S. W. Rep., 564; Wuest v. Moehrig, 57 S. W. Rep., 865.

There being no eviction shown, the burden of proof was upon defendant in error, to show a superior *outstanding* title of which he had no notice, to the one he obtained by his deed from Larkin, and that he is threatened with eviction.   Jones v. Paul, 59 Texas, 45; Rancho Bonito Land Co. v. North, 92 Texas, 75; Price v. Blount, 41 Texas, 472; Cooper v. Singleton, 19 Texas, 266; Woodward v. Rodgers, 20 Texas, 178; Johnson v. Long, 27 Texas, 22; Maverick v. Routh, 23 S. W. Rep., 596; Maverick v. Routh, 26 S. W. Rep., 1108.

*Geo. W. Graves* and *Jno. G. Tod,* for defendant in error.—In an action for breach of the covenant of warranty of title in a conveyance to land, the vendee is not restricted in damages to the consideration stated in the deed, but such stated consideration is merely prima facie, and the true consideration may be inquired into and shown.   Womack v. Wamble, 7 Texas Civ. App., 274; Hall v. Pierson, 1 W. & W., par. 1211; Gibson v. Fifer, 21 Texas, 260.

In a sale of a number of different tracts of land in bulk, where there is a failure of title to any particular or specific tract, the true measure of damages is the actual value of the particular tract to which the title has failed, to be ascertained by its relative value

compared with the balance of the land, assuming the price agreed on by the parties as the value of the whole. Raines v. Calloway, 27 Texas, 685; Grant v. Hill, 30 S. W. Rep., 956; Hynes v. Packard, 92 Texas, 49; Weeks v. Barton, 31 S. W. Rep., 1071-2; Thomas v. Hammond, 47 Texas, 55.

The measure of damages in an action for breach of warranty of the title to land, where the consideration for the deed to the land was an exchange of property, is such proportion of the value of the consideration received by the vendor as the value of the particular tract of land to which the title has failed bears to the value of all the property conveyed. White v. Street, 67 Texas, 177; Grant v. Hill, 30 S. W. Rep., 956; Hynes v. Packard, 92 Texas, 49.

On failure of title, see: Raines v. Calloway, 27 Texas, 685; Grant v. Hill, 30 S. W. Rep., 956; Hynes v. Packard, 92 Texas, 49.

On shortage in acreage, see: Wheeler v. Boyd, 69 Texas, 298; Wuest v. Moehrig, 24 Texas Civ. App., 126.

On breach of covenant, see: Groesbeck v. Harris, 82 Texas, 416; Clark v. Mumford, 62 Texas, 535; Jones v. Paul, 59 Texas, 45; Westrope v. Chambers, 51 Texas, 188; 8 Am. & Eng. Ency. Law, 2d ed., pp. 105 to 108; Rawle on Covenants, 5th ed., sec. 139; Tiedeman on Real Property, enlarged edition, par. 860, p. 873, note 2.

The measure of damages for breach of covenant of warranty of title to land where the vendee has not been in possession is the consideration actually paid, with legal interest from the date of deed; the consideration named in the deed is prima facie only, and the true consideration may always be inquired into, and when shown controls the recitals of the deed. That the rule stated is the general one where the consideration is agreed upon or fixed, see: Groesbeck v. Harris, 82 Texas, 416; Fleming v. Pringle, 21 Texas Civ. App., 228; Thiele v. Axell, 24 S. W. Rep., 552 and 803; Glenn v. Matthews, 44 Texas, 406; Neill v. Watson, 39 Texas, 377 and 378.

That the recited consideration is prima facie only, and true consideration may be shown, see: Gibson v. Fifer, 21 Texas, 260; Glenn v. Matthews, 44 Texas, 406.

When the title to one of several tracts of land conveyed in gross without separate valuation by general warranty deed fails, the true measure of damages is the actual market value of the tract lost, to be ascertained by its relative value compared with the balance of the land, assuming the price agreed upon by the parties as the value of the whole. Raines v. Calloway, 27 Texas, 685; Grant v. Hill, 30 S. W. Rep., 956; Hynes v. Packard, 92 Texas, 49.

The undisputed evidence amply supported the court's action, and showed that W. J. Moore held the superior title to said 102.6 acres of land, thus establishing such breach of defendant's covenant of warranty thereto as authorized plaintiff's recovery. Westrope v. Chambers, 51 Texas, 188; Clark v. Mumford, 62 Texas, 535; Jones v. Paul, 59 Texas, 45.

Possession of land is prima facie evidence of title, and where land conveyed by warranty deed is, at the time of the conveyance, in actual possession of a third party under claim of title thereto, proof of such fact in an action by the vendee against the vendor, upon his

covenant of warranty of said land, is prima facie evidence of failure of title; unless the vendor overcomes this prima facie evidence by showing that, at the time of his conveyance of said land, he had a title superior to that of the person in possession, the vendee is entitled to recover for breach of the covenant of warranty. House v. Reavis, 35 S. W. Rep., 1063, and authorities there cited; Gulf, C. & S. F. Ry. v. Cusenberry, 86 Texas, 525.

JAMES, Chief Justice.—The amended petition of Trammel alleged that on February 23, 1903, defendant Larkin executed to him and Geo. W. Graves a general warranty deed to certain land in the E. Roark league in Ft. Bend County, and that on March 7 Graves quitclaimed his interest therein to plaintiff. That on May 16, 1903, Larkin executed another deed of general warranty to plaintiff conveying certain lands in same league, both deeds being annexed as exhibits.

Plaintiff alleged that said two deeds of defendant were the result of a purchase of all the lands covered by both, and related to and were parts of a single transaction, and although the second of said deeds recites the consideration of one dollar, the real consideration for both deeds was the same and represented the purchase price for all the lands together. That the fair and reasonable market value of the 102-acre tract described in the second deed was at its date and is now thirty dollars per acre, $3,060; that at the time of the execution of said deeds defendant did not have the superior title to said 102 acres, nor was seized thereof, nor in possession thereof, but one W. J. Moore then had the superior title thereto and possession thereof, and then and now refuses to surrender the same, or any part thereof to plaintiff, and though often requested defendant has not warranted and defended the title and possession of said 102 acres, wherefore he has breached his covenant of warranty in respect thereto and is bound to pay and return to plaintiff the market value thereto to wit, $30 per acre with interest as aforesaid. And prayed for judgment accordingly and for general relief.

It appears from the exhibits that the 102-acre tract was described as adjoining on the east the first tract mentioned in the first deed, and by the recitals of the second deed the following appears: That it was executed "for the purpose of correcting and making more full and complete the description of the tracts of land conveyed by me to H. L. Trammel and Geo. W. Graves by deed dated February 23, 1903, and for the purpose of ratifying and confirming said conveyance and of adding thereto the tracts of land hereinafter described, it having been intended by me in said deed and being now intended by me to convey all lands belonging to me in Fort Bend County, Texas, and also for and in consideration of the sum of one dollar to me in hand paid by H. L. Trammel, of Harris County, Texas, the receipt of which is hereby acknowledged, have granted, sold and conveyed, etc."

Defendant pleaded general demurrer, general denial, a plea impeaching the consideration of the deed embracing the 102-acre tract; and charged in substance that Geo. W. Graves prepared the papers

and knowing that the 102-acre tract formed no part of the transaction and was not considered in the deal and that defendant had only a quitclaim title thereto and that defendant's warranty, by the agreement of the parties, was not to be covered by said covenants of warranty, fraudulently included said tract in said warranty clause for the purpose of acquiescing in the adverse claim of others thereto, and declaring a breach of the warranty and to entrap defendant into a liability for damages for a breach thereof; that defendant, as plaintiff well knew, only intended to exchange his plantation then enclosed by a fence and pointed out the land and corners as so enclosed; and that the value of the 102-acre tract was inconsiderable compared with the rich bottom land then in cultivation, that it was wild prairie land fit only for grazing, that its value was insignificant compared with the other property exchanged.

To this answer plaintiff filed a supplemental petition. There was a verdict for plaintiff of $1,665 with interest, upon which judgment was entered.

The testimony showed that on February 23, 1903, a general warranty deed was executed by Larkin to Trammel and Graves for 1,004 acres of land more or less, reciting the consideration of $20,000 cash and the assumption by the vendees of an indebtedness of $13,500, which was secured by a deed of trust on the land in favor of the Union Central Life Insurance Co. On the same date the parties signed a contract in connection with the transaction which recited that Larkin had that day executed to Trammel a bill of sale to a lot of personalty located in what was known as the T. L. Larkin plantation, and a deed to the land, and that in consideration of said bill of sale and warranty deed, Trammel and Graves agreed to complete a certain oil well on certain land and to convey same to Larkin on or before thirty days after date, and to assume the payment of the aforesaid debt of $13,500, etc. And that it was further understood "that should any flaw be discovered in said title which can not be corrected by said first party, that they will rescind this contract and release second parties from any obligation thereunder and will compensate them for any difference which may at that time exist between the reasonable rental value of said land and personal property from the time said second parties came into possession thereof and the amount of money which they have expended for planting and improving said plantation."

Afterwards, on May 16, 1903, the second deed was made for the 102-acre tract and another tract, which deed contained the recitals and the expression of one dollar consideration as aforesaid.

In addition to the above instruments there was oral testimony going to show that the intention was to convey the 102 acres originally, and that it was intended to be covered by the consideration for the first deed.

The court did not submit any issue as to fraud or mistake in connection with the execution of the second deed, except as the same is involved in the charge next quoted.

The court submitted the following issue: "If you believe from the evidence that the two deeds of February 23, and May 16 repre-

sented parts of one and the same transaction between the parties, that is to say, that the 102 acres in question was mutually intended between the parties in the first deed of February 23 to be included therein and warranted thereby, and that the consideration, if any, of the deeds was one and the same, then you will find for plaintiff and fix his damages, etc."

The two deeds standing alone would, it seems to us, identify the two conveyances as a single transaction, in view of the recitals of the second instrument. But in view of the contract which appears to have been made cotemporaneously with the first deed, and in view of the recital of a nominal consideration in the second deed the court was doubtless correct in submitting the above as an issue to be determined by the jury.

The first assignment of error is that the court erred in permitting a witness to testify to the market value of the prairie land in the "Larkin plantation" in February or May, 1903, because the deed from Larkin was the measure of defendant's liability, and it fixed that liability at one dollar. The point made seems to be that any other consideration than that expressed in the deed itself could not be inquired into. This is clearly incorrect. And for the same reason the ninth assignment is also overruled.

It is incorrect particularly in this instance, where the recitals of the last deed, which conveyed the property in question, connected it as part and parcel of the original transaction and deed, as one conveyance. The recitals of the last deed show that it was the intention of the parties when the first deed was made to embrace, as a part of what was sold, the 102-acre tract in question, and the evident purpose of the second deed was to bring it within the terms and operation of the first one. That it was intended to be conveyed originally was testified to by defendant himself. The assignment is in reality an impeachment of the measure of damages which was applied by the court, as follows: "If you find for the plaintiff . . . you will assess his damages at such sum as you believe from the evidence was the fair market value of said 102 acres of land at the date of said first deed, with six percent interest per annum thereon from said date to the present time, provided that the market value thus fixed for said 102 acres (taking into consideration the total amount you may find was paid for all of the land conveyed by said two deeds) does not exceed its proportionate part of said total consideration. Should the market value exceed such proportionate part of said consideration you will then assess his damages at said proportionate part of said consideration with six percent interest per annum from February 23, 1903, to the present time." This rule is in accordance with the authorities in cases of this character. Hynes v. Packard, 92 Texas, 49, and cases cited; and it was not error to consider the testimony objected to if the jury found the conditions to exist which brought the lands embraced in the second deed within the consideration and warranty of the first deed.

The second assignment is that there was error in permitting Trammel to testify as to statements of defendant as to the number of acres of prairie land in the Larkin plantations; and appellant's

proposition is that the several tracts composing the Larkin plantation which was exchanged for an oil well owned by plaintiff, were described in written instruments, and parol testimony was inadmissible to show how much land was conveyed or intended to be conveyed. It seems to us that upon the issue as to whether or not the intention of the parties was to convey this 102 acres by the first deed, that is to say, whether or not the two deeds were part of one and the same transaction with a common consideration, parol testimony was clearly admissible.

By the third and fourth assignments plaintiff in error complains of the admission of two deeds of trust from Larkin dated prior to the first deed, by which he had encumbered the 102-acre tract among other lands. The objection was that these instruments were irrelevant and immaterial and injurious to defendant because the deed from Larkin showed the land that was conveyed. It appears from the bills of exception that these instruments were offered for the purpose of contradicting the testimony of Larkin to the effect that he had never warranted the title to the 102 acres to any one and never intended to do so. Both these deeds of trust contained covenants of warranty, and were admissible for such purpose. Besides, defendant testified to both these instruments and it is not perceived what additional prejudice defendant sustained by their introduction.

Under appellant's fifth assignment of error he presents the following two propositions:

1st. "That the testimony of Trammel as to the value of the personal property included in the exchange of property between plaintiff and defendant was not admissible because the terms of the exchange were reduced to writing and fixed by the contracts and the consideration in the deeds executed in accordance with same showed that it was an exchange of property in bulk without valuation, parol evidence to vary said terms or to establish a basis for recovery of money was inadmissible." It appears that a bill of sale was made by Larkin to Trammel and Graves for the personalty on the plantation, in addition to the deed to lands, as a part of the exchange. Now, in order to correctly apply the measure of damages for the loss of one of the tracts of land, it was necessary to arrive at the consideration for the lands, and therefore inquiry into the value of the personalty was proper.

2d. That the contract provided the mode of relief and the measure of damages to defendant in case of failure of title. This proposition we do not sustain for the reason that the provision contemplated the form of redress in case of rescission, which has never been claimed nor sought. The contract seems to have been fully executed and carried out by the parties.

Under the sixth assignment plaintiff in error presents five propositions, one being that the contract furnished the measure of damages, which proposition we have already overruled as not having any application to the conditions of this case. Another is that the third and fifth paragraphs of the court's charge are confusing and contradictory, which we conclude is not the case. Another is that

"As there was no valuation put upon each acre, nor any sale by acre, but sale in gross, a shortage in acreage did not constitute a breach of the covenant of warranty." This was a case of the failure of title to one of several tracts or parcels conveyed, and it is evident such failure involves a breach of the covenant of warranty of title. Another is "that the evidence, written and oral (independent of the deeds), showed that $20,000 also represented the value of the personal property exchanged with the land, and the jury should have been instructed to first deduct from the named consideration in the deed, the value of the personal property to ascertain the true value of the land conveyed. There being no evidence of the value of the land except as recited in the deed, the jury was necessarily limited to and compelled to accept the $20,000 recited in the deed as the value of the land conveyed as the total from which the aliquot part of the 102 acres must be fixed, when in fact the personal property contributed to the extent of its value, to make up said $20,000." Under the first assignment of error we have quoted the charge on the measure of damages. There is nothing in it that would lead the jury to understand that they should adopt $20,000 as the consideration or value of the land. What was paid for the land was left to the jury. The fact that the personal property was included in the exchange along with the land was before them, also the value of the personalty and they were instructed to base their verdict upon what they found was paid for the land. It might have been expedient for plaintiff in error to ask a more specific instruction, but this was not done.

The fifth proposition is that there was no evidence to support the said charge on the measure of damages, because there was no proof of the value of the entire real estate, and no agreed valuation of either the land or the personal property, and there was no definite valuation of the 102-acre tract. We conclude that there was sufficient in the testimony to enable the jury to arrive at these values.

The seventh and eighth assignments are an impeachment of the measure of damages adopted by the court, and they are overruled.

The tenth assignment is that the following instruction should have been given: "The jury is charged that there is no evidence before you that plaintiff was ever evicted by judicial proceedings from the 102-acre tract. It is therefore incumbent on plaintiff to show that defendant's title to said 102 acres was worthless, or that some one else held the superior title to said land when conveyed to plaintiff. Therefore, unless you believe that Moore or some one else held the title to said land, superior to defendant Larkins' title, at the date of said deed, you will find for the defendant."

The court instead charged the jury that the undisputed evidence showed that the title to the 102-acre tract "has failed and that the same has been in the exclusive possession of a third party and that defendant is unable to deliver the title and possession thereof to plaintiff." The twelfth assignment alleges this to be erroneous, as it was a question of fact to be submitted to the jury, and because

plaintiff failed to make out the outstanding title as charged in his petition by the greater weight or preponderance of evidence.

These assignments present some difficulty. In order to recover upon a covenant of warranty of title, it rests upon the plaintiff ordinarily to show an eviction. In this case the 102 acres in question was, at the date of the deeds, in possession of a third party, who had a chain of title deeds to it, but whether or not they connected with the sovereignty or a superior title was not shown. It was not enough for plaintiff to show such adverse possession, and the cases cited by appellee, House v. Reavis, 35 S. W. Rep., 1063, and Gulf, C. & S. F. Ry. v. Cusenbury, 86 Texas, 525, have no reference to actions upon warranties. It was necessary for plaintiff to show that the occupant of the land was holding under a superior title. See McConaughey .v. Bennett's Executors, 40 S. W. Rep., 545. The deeds under which the occupant held and claimed were not sufficient evidence of superior title. And the testimony was not sufficient to show that the occupant had acquired title by limitations when the deeds in question were made.

Appellee says that it is shown by the record that defendant had only a worthless quitclaim deed to the land. The fact that his deed was a quitclaim would not establish that he did not have the title. But we find that the 102-acre tract was outside of defendant's fence and adjoining it and that he testified as follows: "They asked me if I owned any other lands, and I told them I did not, that every acre I owned was fenced and had been for some time, I didn't own anything besides what was under that fence."

It was probably this testimony of plaintiff himself, which caused the court to charge the jury that plaintiff's title had failed. We think the court did not err. Defendant had a quitclaim for the land and yet declared he did not own it. We think this was sufficient proof that he really had no title. The law would not be so unreasonable as to require the covenantee to sue an occupant to test the title, where it is apparent that such an effort would be futile. The judgment is affirmed.

*Affirmed.*